Case No. 25-3273, Schoening Investment LP v. Cincinnati Casualty Company. Argument not to exceed 15 minutes per side. Mr. Snogres, you may proceed on behalf of the appellant. Good morning. Good morning. Good morning and may it please the court. My name is Joe Snodgrass. I represent the commercial policy holder Schoening Investments in this case. The commercial policy has a loss payment provision that provides for... Just out of curiosity, why isn't your client just doing the repair and then getting the money back, just out of curiosity? It's not in the record, Your Honor, as to what happened after the fact, after these payments. But we do know that... What was the event? I believe it was a weather-related event, Your Honor. Uh-huh. But is there any reason they can't do the repair now and the case goes away? They chose not to make repairs, as you may or may not know. There's initial payments that are owed under commercial property policies, and that money is the policy holder's to do with it as it wishes. In other words, you can make repairs and have replacement cost coverage, but that's at the option of the policy holder. The policy holder, there's nothing in the record that suggests the policy holder exercised that option here. The policy does have a right to get cash free and clear of any obligation to do anything with it, and there's no dispute about that. So, let's go back. The loss payment provision in this case provides for two different payment options, at least, well, more than that, but two are at issue here. Either the option to pay value or the option to pay repair. Here, the insurer chose to pay under the repair cost option. There's no dispute about that. What there is a dispute about is that the insurer then, in making the repair cost payment, grafted a concept from the valuation provision and applied depreciation to that repair cost. What the insurer's interpretation does, it collapses separate payment options and makes one. And it eviscerates the entire scheme of the policy. Now, I'd like to start with a textual analysis, and in the brief time I have here, I'd like to focus on, direct the court's focus to three different concepts, three different categories of policy terms that support the policy holder's interpretation. First is the option language itself in the loss payment provision. Second is the limiting language as it relates to the ACV definition. And third is the overarching repair cost coverage scheme of the policy. Let's first focus on the option language. CCC, Cincinnati Casualty, interprets its policy to provide no options. That all options, payment options, must be determined under replacement cost, less depreciation. The dictionary definition of the word option is the act of choosing between separate alternatives. The language at issue is, in the event of a loss insured by this coverage part at our option, we will either, and then it goes on to provide either the value option or the repair cost option. Cincinnati's position that these two things are the same, that there is no option in the language, conflicts with the actual terms of the policy, and that's one of the reasons why plaintiff's position should be adopted here. The second issue, and the second category of policy terms I want the court to focus on, is the limiting language applicable to the ACV definition. And specifically, the policy provides, we will determine the value of covered property in the event of a direct loss as followed. And then that's where the only part of the policy where the ACV definition is. Again, we will determine the value of covered property. But what the policy makes clear in two different sections is that covered property and the value of covered property is a value distinct from the amount of the loss. We see that in two different places. First, covered property is a defined term, and it means building. It does not mean repair costs. Second, we see it in the coinsurance clause. The coinsurance clause has different... Let me use the example of the elevators in this building. If the elevators break down and have to be repaired, the covered property are the elevators? No. Covered property is... In that specific situation, what would the covered property be? Be the building. But the covered property includes fixtures, right? Wouldn't the elevators be fixtures? They're included in the value of the building. But covered property itself means building. If you look at the coinsurance clause, when they're listing covered property and the amount of loss, those are two separate and distinct values. They give examples in the policy of what covered property is, and it's the value of the building. The coinsurance clause makes that clear. And so, again, it's a defined term, and it means the entire building. But what happens... Okay, go back to my elevators then. What do I do? Let's say there's a replacement cost to replace the elevators, and there would be maybe a repair cost because perhaps I just need to take the doors out, although that's kind of a replacement. Most repairs involve some kind of replacement at some level, right? Because you're putting some part in or whatever? No. Why is there no option in my hypothetical about the elevators? The insurance company can pay the repair costs for the elevators. Repair costs don't always entail replacement. You can have smoke damage. You've got to clean it. You've got to mold damage. You've got to remediate it. You've got to have water damage. You've got to mitigate it. So repair costs don't necessarily entail the replacement. Sometimes they do. Sometimes they don't. But repair costs are distinct, and they're not to be depreciated unless the policy specifically says repair costs are to be depreciated. We know that from the Farmland Mutual versus Johnson 2000 Kentucky Supreme Court decision. There is no language in this policy that remotely suggests that repair costs should be depreciated. In fact, what there is in this policy... Do you agree that that case, the policy involved in that case was not this policy, right? It was the pre-2000 policy that changed to this policy. Am I right about that? There is different language. The policy language that specifically was at issue in this case... So it's a different policy? Fortunately, we have a case, Cincinnati Specialty. It's a federal district court case, Kentucky, 2015. And in that case, the district court looked at a Cincinnati policy from an underwriting affiliate of the defendant. They were applying Kentucky law. They were looking at the identical policy language in dispute here. And in that case, in 2015, Judge Hale adopted the exact position that we are advocating for here today. So you have the same policy, same insurer, same interpretation. And in the intervening 11 years, Cincinnati, in the state of Kentucky, kept issuing the same policy. And now wants to come before the federal court and say no. It meant something in 2015. And yeah, we could have modified the forms. Maybe we didn't like what Judge Hale said. But we want a do-over. We want to reinterpret this policy and do it differently. And I think that when you talk about the authority, their textual analysis starts, I believe, on page 19 of their appellate brief. It is striking in that there is not one treatise or case anywhere in the country that they cite for this collapsing interpretation. Sorry, Judge. What do you make of the optional coverage provision which takes on deductions for depreciation? What do we do with that? So I want to be very specific. The loss payment provision has the separate options in it. And then it says to determine how to pay under the valuation option or the repair cost option, you can either look to the applicable terms here or the applicable terms elsewhere in the policy. That is what that end of the loss payment provision says. Repair cost coverage is explicit throughout the policy how you calculate it, because there are repair cost coverage grants, repair cost coverage extensions, repair cost sublimits, repair cost conditions, repair cost exclusions, repair cost exception to exclusions. There is a comprehensive scheme for how to calculate repair costs. In a nutshell, your point is that word is replacement, not repair? Is that in a nutshell your answer? In a nutshell, our position is when you pay repair costs, you do it pursuant to the policy terms on the comprehensive scheme. You don't just slap depreciation on any repair costs. You can't do that. And repairs are different from replacement? That's your point? Repairs are... Different from replacement? Absolutely. What about the fact that they often will overlap? Well, so there are three different concepts here that are applicable. The cost of repairs, actual cash value of a building, and replacement cost coverage. So actual cash value would only be paid under this policy form if the repair costs exceed ACV. It's a constructive total loss. Then the insurance company could pay the lesser of repair costs for ACV. In that case, they'd pay ACV and the policyholder wouldn't get the repair costs. They would only get ACV unless, as Your Honor started this whole discussion out at the beginning of this oral argument, the policyholder chose to get the RCV coverage and make repairs. So the purpose and the common sense interpretation of this policy is this carrier pays full repair costs unless those repair costs cause a constructive total loss higher than the building's ACV then the insurer is going to pay the lesser. That's the whole option here. It gives the carrier the option to pay the lesser of ACV or the lesser of repair costs. That's the insurance advantage on that. We only get repair costs if it exceeds ACV if we actually make repairs. In that circumstance, we get the ACV not the full repair costs. Thank you. You'll get your full rebuttal. Good morning, Your Honors. And may it please the Court. My name is Aaron Stevenson and I represent the Appalee, the Cincinnati Casualty Company. This case is about whether Schoening is entitled to a payment that does not reflect depreciation. But to receive such a non-depreciated payment, an insured must opt into the optional replacement cost coverage. Schoening did opt into that coverage but did not satisfy the explicit condition that they repair or replace the property to receive that non-depreciated payment. In essence, this case is about Schoening trying to obtain the benefit of replacement cost coverage without satisfying those conditions. And in answer to your question, Judge Sutton, about whether Schoening could now go back and repair the property in this case would go away, they cannot. Under the policy, after an insured receives an actual cash value payment, they have 180 days to begin repairs or replace the property. Schoening did not do that. Schoening made its election to receive the actual cash value payment that it was paid out. What depreciation typically comes out of a repair? I just find that to be an odd concept just to associate with a repair. Yes, Your Honor. So let's take a roof, for example. If a section of a roof collapses, in that repair, there's going to be new materials that are used to replace that roof. So, for example, there'll be new shingles that are put on the roof or new roofing paper. So at some level it's a replacement, not a repair. Yes, Your Honor. Repairs and replacements often go hand in hand. Because when you're repairing a property, it often includes... But in this example, he says, well, what about smoke damage, water damage? You have to, you know, remediate that stuff, whatever. There may not be replacement involved. There would be no depreciation there? It would depend on the circumstances,  as to what is being repaired. So there may be a situation where a repair is made where depreciation is not paid out. But that's not the case for every single repair as we just discussed. So if we use the roof example, if an insured has a 20-year-old roof and it's on year 18 of its life, what the insured has lost is an 18-year-old depreciated roof of material, such as shingles. So when that repair is made, the insured is getting the value of brand new shingles and brand new materials when what they lost was an old depreciated roof and old depreciated materials. So in that hypothetical, does the concept of covered property make any sense? Is there any covered property there or is the covered property it's just the buildings in it so it doesn't matter when you're repairing the roof? Your Honor, covered property does not mean the entire building. Covered property is defined as building and then in that definition it contains specific subcomponents that are delineated. Schoening's argument that covered property means only the entire building makes no sense as a logical matter. Cincinnati casualty is only required to pay out for losses to covered property. So to use your elevator example, if the elevator broke in this building under Schoening's interpretation the insurer would have no obligation to make any payment at all. The same goes for the roof example we've been discussing. Why no obligation? Spell that out. Because if you look in the policy,  and I can direct you to the specific provision. On page ID 68 it says we will pay for a direct loss to covered property at the premises. That sets Cincinnati casualty's obligation for insurance to pay out for the loss to covered property. But again, using the roof example if a roof collapsed that's not the entire building. There are structural walls there are other components of that building. So if roof as a subcomponent of the building did not mean covered property Cincinnati casualty would never have to pay out for a partial loss. That's an absurd reading of the contract. But you were answering it in the context of Judge Nalbandian's just to make sure I've got it translated. So his example was the elevators have the problem. You're saying they think it's the whole building. And you're saying the way the policy works if it was quote just the elevators Cincinnati wouldn't have to pay anything? I'm saying the opposite, Your Honor. Our argument is that covered property includes subcomponents of the building. No, no, no. Under their position. Under their interpretation I thought you were saying if the elevators were the only thing that broke Cincinnati wouldn't have to pay anything. I'm trying to figure that out. That's under their interpretation, Your Honor. And why would that be under their interpretation? That's what I'm trying to get you to... They read covered property, Your Honor, to mean the entire building as a whole with no subcomponents. So in their mind either the entire building collapses and the entire building is gone which is the entire covered property or there's no covered property at all involved in the claim. Because there's no such thing as partial loss? Is that another way of putting it? Exactly, Your Honor. That's exactly how their argument that's the logical end to their argument is that there would be no such thing as a partial loss because Cincinnati casualty only has to pay out for covered property. So in the elevator example under your view if the repair to the elevators was let's say they had to replace all three cables in the three elevators,  And the cables are 20 years old. You would take depreciation out of that when you replace... That would be a repair but it's also a replacement? That's exactly correct, Judge. Why doesn't the definition of actual cash value have repair in it? Why does it only say replacement? Is it just this? Like you could you're essentially fitting the repair into a replacement and that's what it is? Your Honor, the definition of actual cash value does not use the term repair but it doesn't need to. If you look elsewhere in the policy where we talk about replacement cost, replacement cost covers repairs or replacements to the property. Where is that? That seems like... I mean I realize you know in the original lost payment provision it says pay the cost of repairing or replacing. It's just funny that suddenly in this provision replacement stands for repair as well. That's what I'm puzzled over. Understood, Your Honor. It's the term replacement cost and so if you look in the replacement cost provision it's in Section 3D of the replacement cost provision. This is one example. It says that we will not pay out on a replacement cost basis until the lost or damaged property is actually repaired or replaced. And so if... I got it. So the key point is don't obsess over repair, replace obsess over replacement cost. Yes, Your Honor. And replacement cost if it means repairs or replacement in the replacement cost provision then it must also mean repairs or replace in the actual cash value definition because the terms and the policy must be read as a whole.  Your Honors, I'd like to address a few points that Michael... I'm sorry. I just want to make sure I've got one other thing. And so I guess that answers the question about this optional coverage point what you just said because the optional coverage would be the actual optional coverage they did would be for repairs? I'm sorry. I thought they had an optional coverage that they could have used that mentions deductions for depreciation, right? Correct. And does that language use replacement,  or both? So the optional coverage that Shoning opted into is the replacement cost coverage. That's three on page ID 102? Let me confirm the page ID,  but I believe that's yes, page ID 102 replacement cost. That's the optional coverage for this, right? That is the optional coverage that Shoning opted into to receive a non-depreciated payment. However, there are explicit conditions to receiving that non-depreciated payment, one of which is they actually repair or replace the property, which they did not do here. And in that replacement cost coverage, in 3D on page ID 102 is an example of where it says replacement cost basis covers repairs or replacements. And the district court, Your Honor, also pointed out two other locations in the policy where the term replacement cost talks about repairs or replacements. Your Honor, a few points I'd like to address from what my colleague on the other side here talked about during his argument is the application of farmland. Your Honor, I believe you asked if farmland had a different policy. The unequivocal answer is yes. The farmland policy did not contain the explicit textual bridge that connects the repair cost provision to the policy determined in accordance with the valuation provision. That textual link did not exist in farmland. So the last paragraph in 4A on page ID 96 And let me just confirm the page ID, Your Honor, but I believe that's correct.  loss payment definition. That's correct, Your Honor. That this we will determine the value of loss that part is not in the policy in farmland. Is that right? That is correct.  the Judge Hale case? Farmland was the Kentucky Supreme Court case. What's your response to the Judge Hale case that they were relying on? You're one step ahead of me,  I'm not. I promise you I'm not, but keep going. So Cincinnati's specialty was the Judge Hale case from the Eastern District of Kentucky that my colleague on the other side relies on. That case addressed a wholly different issue than what we have here today. That case at its heart was the question was does the broad evidence rule apply in determining the definition of actual cash value? In ruling that the broad evidence rule does apply to ACV the court made a passing observation that in that case it may not be necessary to calculate ACV because the payment was paid out on a repair cost basis. But if you look at the language of that case Cincinnati's specialty explicitly left open the possibility that ACV must be calculated there. They said to the extent that the insurance umpire has to calculate ACV the broad evidence rule would apply. So Cincinnati's   wasn't really asking   company pay out on a depreciated basis when the insurance company chooses the repair cost option. Your honor I would like your honors I would also like to address Let me just pause one second. Judge I just want to make sure Judge Griffin you have a chance are you good? I don't have any questions. Okay great. Continue.  I would also like to address my colleagues argument that CCC's interpretation of the policy which is the correct interpretation of the policy collapses the payment option resulting in Cincinnati casualty never paying out the cost of repair. That's an incorrect reading of the payment options that exist in the policy. Under the value option Cincinnati casualty will pay out the value of the lost or  property as calculated in accordance with ACV. That's one option. Separately and existing simultaneously CCC can pay out the repair cost of the   as that repair cost is calculated in accordance with the ACV definition. That's the elevator cable example that we used earlier is that's a repair but in that repair you're replacing some of those cables. So what the insured lost in that example were 20-year-old depreciated elevator cables which is why it makes sense when that repair is done to provide the insured the value of a 20-year-old depreciated cable because that's what they lost. And then finally your honors Just one quick thing on the four options so this is D4A I guess it is they then insert rebuild I guess that's also different repair rebuild or replace Yes your honor the repair rebuild I'm sorry I'm just curious I mean it kind of just makes it a little confusing we've now got another option Yes your honor I believe that that option this case is not about I understand it's not about I'm just obviously it is about repair and replace so I'm just trying to figure out why we inserted rebuild there Yes your honor I don't exactly I can't get in the drafter's mind as to why they inserted rebuild there but what I can say is that's a distinct option where the insurer has the option to replace repair rebuild or replace the property with like kind or quality rather than issuing a monetary payment to the insured I see I see Your honors I believe I have about 20 seconds left I'm happy to answer any other questions but otherwise Cincinnati Casualty will rest on its brief and we ask this court to affirm All right thank you very much Mr. Stevenson Gus you've got your  Yes your honor as to your question on repair rebuild that option actually allows the insurer to take control of the property itself and make the repairs itself and obviously there you don't see any reference to depreciation there now the reason why Judge Hale's  addresses this issue is he is clear and he says Arcadia's policy gave Cincinnati the option of paying either the actual cash value of the damaged property and this option      so there's no question it doesn't seem for a moral argument that they understand that these are different values that repair costs mean something different than the value of the covered property but now the question is can you take depreciation if you pay repair costs in our  we provided the court with an  treatise by the international risk management institute an insurance industry publisher because this is an isoform these isoforms are annotated the annotation for the repair cost option under the I thought the treatises were every which way no they're consistent with our interpretation and what the treatise says is under the insurer's second option it may elect to pay the cost of  or replacing the damaged property note that this option does not permit the insurer to take a deduction for depreciation from the estimated repair cost so the insurance treatise addressing this same provision on point says you can't depreciate this and this is a published treatise that's been around for over a  this English was relying on farmland didn't it cite farmland it cited both farmland and Olson vs. Lamar's aren't both of those cases involving the old policy farmland involved a ACV definition that did not include the word repair that's farmland that's  Supreme Court 2000 so for this proposition I think what the annotators are saying hey you've got a policy that requires you to pay repair cost you don't reference the word depreciation in this payment option see this Kentucky Supreme Court case where they said unless you put the word repair in your ACV definition you're paying for repair costs so that's what the Kentucky Supreme I guess I'm not the treatise is building on farmland farmland is really interpreting a policy that doesn't have this paragraph in it in the lost payment section we can debate about what we think the import of that paragraph is but it's not there I mean it's just not the same it's not the same policy it doesn't have the link between ACV and the cost of the repair if you think that's the link consider the holding of farmland what farmland did is it was looking at an ACV definition and remember the ISO form doesn't have an ACV definition that ACV definition is provided by Cincinnati itself like the definition in farmland the  the  in their policy does not include the word repair and farmland said it's actually a misrepresentation of the policy to say we can depreciate repair cost when your ACV definition does not include the  repair one last final point replacement cost really is the way to think about it that spells it out that explains why it doesn't focus on repair and replacement earlier this policy has a function and we're focusing only in this litigation on the first payment either the ACV for the building itself or the repair cost RCV coverage the repair cost coverage you only get it if you actually spend the ACV  they were never going to get triggered ACV is a stop gap it prevents you from having to  all repair costs if you have a constructive total loss again this is also explained by Ermey in the annotations that the purpose of that valuation clause is to say hey the repair costs are too crazy we're capping you with the ACV of the building so that's the purpose and I appreciate the court's time all right thanks to both of you for your helpful briefs  it's a tricky case it was terrific to have some great lawyers really appreciate it thank you so much the case will be submitted